# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

CECELIA MARQUEZ,

      Plaintiff,

v.                                                     No. 98cv0534 JC/JHG

KENNETH S. APFEL,
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

This matter is before the Court on Plaintiff's (Marquez's) Motion to Reverse or Remand the Administrative Decision, filed March 22, 1999. The Commissioner of Social Security issued a final decision denying Marquez's application for supplemental security income. The United States Magistrate Judge, having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, finds the motion is well-taken and recommends that it be GRANTED.

Marquez, now fifty years old, filed her application for supplemental security income on November 17, 1994, alleging a disability which commenced October 26, 1994, due to chronic pain in her left elbow, right wrist, back, feet, chronic anxiety, and depression. She has an eleventh grade education with past relevant work as a motel maid and waitress. The Commissioner denied Marquez's application for supplemental security income both initially and on reconsideration. After conducting an administrative hearing, the Commissioner's Administrative Law Judge (ALJ) found Marquez did not have a severe mental impairment, was not credible, had the residual functional capacity for the full range of sedentary work, and was unable to perform her past relevant work.

Relying on the grids, the ALJ concluded at step five that Marquez was not disabled within the meaning of the Social Security Act. The Appeals Council denied Marquez's request for review of the ALJ's decision. Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes. Marquez seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. §405(g).

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)). The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *Thompson v. Sullivan*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, and her impairment meets or equals one

2

of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. *Id.*

In support of her motion to reverse or remand the administrative decision, Marquez argues the ALJ erred in finding her mental condition was not severe, erred in relying on the grids at step five and erred in assessing her credibility.

The ALJ concluded Marquez did not have a severe mental impairment. This determination is not supported by substantial evidence. The record indicates Marquez was hospitalized as a result of a nervous breakdown and she was prescribed Xanax.[1] On July 28, 1994, Dr. Kirkhart diagnosed chronic anxiety and continued her on Xanax. Tr. 118. Dr. Kirkhart also noted dizzy spells. Tr. 119. On October 19, 1993, and January 11, 1994, a health care provider at the Bhasker Medical Clinic noted anxiety and depression. Tr. 129, 130. On August 16, 1993, it was noted Marquez suffered a panic attack. Tr. 133. In light of this record, the ALJ's determination that Marquez did not suffer from a severe mental impairment is not supported by substantial evidence. On remand, the ALJ should complete the sequential evaluation analysis, especially her assessment of Marquez's residual functional capacity, in light of her severe, non-exertional mental impairment.

Marquez next contends the ALJ failed to properly complete the Psychiatric Review Technique Form (PRT form). When there is evidence of a mental impairment which allegedly prevents a claimant

---

[1] Xanax is indicated for the management of anxiety disorder or the short- term relief of the symptoms of anxiety. Physicians' Desk Reference, 2294 (52nd ed. 1998).

from working, the Commissioner must follow the procedure for evaluating mental impairments as set out in 20 C.F.R. § 404.1520a. *Cruse v. U.S. Dept. of Human Services*, 49 F.3d 614, 617 (10th Cir. 1995). At the administrative hearing level, the ALJ may complete the PRT form with or without the assistance of a medical advisor. 20 C.F.R. § 404.1520a(d)(1). However, the standard form must be appended to the decision. 20 C.F.R. § 404.1520a(d)(2). In this case, while the ALJ append a PRT form to the decision, it was not completed in accordance with the evidence of record. Moreover, the ALJ failed to discuss in her opinion the evidence she considered in reaching the conclusions expressed on the form as required by *Cruse*. On remand, the ALJ should complete the PRT form to reflect all the evidence of record and discuss in her opinion the evidence she considered in reaching the conclusions expressed on the form.

Marquez next argues the ALJ erred by relying on the grids at step five. At step five, the burden of proof shifts to the Commissioner to show that the claimant retains the residual functional capacity to do work which exists in the national economy. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). In certain cases, at the fifth step, the ALJ may rely solely on the grids.

The grids reflect the existence of jobs in the national economy at various residual functional levels by incorporating administrative notice of occupational publications and studies. 20 C.F.R. §§404.1566(d); 416.969a . The grids aid the Commissioner in determining what specific jobs exist in the national economy for the claimant. To apply the grids, the ALJ must make findings of fact as to age, education, work experience, and residual functional capacity. 20 C.F.R. §§404.1545, 404.1563-.1565; 416.969a. These findings of fact are plugged into the grids to produce a factual conclusion of disability. 20 C.F.R. §§ 404.1569; 416.969a.

The grids assume that a claimant's sole limitation is lack of strength, also known as an

exertional impairment. 20 C.F.R. Part 404, Subpt. P, App. 2, §200.00 (e)(2). In a case such as this, where a claimant presents evidence of both exertional and non-exertional impairments, the ALJ must make findings on how much a claimant's work ability is further diminished by the non-exertional limitations. *Id.* If the non-exertional limitations are significant enough to further reduce work capacity, the ALJ may not rely solely on the grids but must instead give full consideration to all relevant facts, including expert vocational testimony if necessary, in order to determine whether a claimant is disabled. *Channel v. Heckler*, 747 F.2d 577, 583 (10th Cir. 1984).

In other words, the grids cannot be used conclusively when a non-exertional impairment limits a claimant's ability to perform the full range of work in a particular residual functional capacity category. *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987). When non-exertional limitations are present, the grids can only be used as a framework for considering the extent to which such limitations further diminish the claimant's ability to work by reducing the types of jobs that the claimant would otherwise be able to perform. *Talbot*, 814 F.2d at 1460; 20 C.F.R. Pt. 404, Subpt. P., App. 2, § 200.00 (e)(2). In assessing the extent to which a claimant's ability to work is eroded by his non-exertional impairments, the ALJ will normally need to obtain the testimony of a vocational expert. *Hargis v. Sullivan*, 945 F.2d 1482, 1491 (10th Cir. 1991).

In this case, the ALJ found Marquez retained the residual functional capacity for the full range of sedentary work which was not limited by her mental impairment or her pain. This determination is not supported by substantial evidence. The record clearly establishes Marquez's anxiety disorder limits her ability to work. Moreover, Marquez's allegations of disabling pain may have further eroded her residual functional capacity. *See infra* pp. 6-7. Accordingly, in light of all the evidence of record, it was not proper for the ALJ to rely solely on the grids at step five. Therefore, the case must be

5

remanded in order to obtain vocational expert testimony at step five.

Marquez argues the ALJ did not properly assess her credibility. The ALJ found Marquez's testimony was not fully credible. While it is true that this Court generally defers to credibility determinations of the ALJ, such deference is not absolute. *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993). The ALJ's credibility determination is not supported by substantial evidence. A remand is required due to this omission. *Kepler v. Chater*, 68 F.3d 387, 391-92 (10th Cir. 1995). On remand, the ALJ should reevaluate Marquez's credibility.

Marquez also alleged she was disabled due to pain. In evaluating a claim of disabling pain, the appropriate analysis considers (1) whether there is objective medical evidence of a pain producing impairment, (2) whether there is a loose nexus between this objective evidence and the pain, and (3) whether, in light of all the evidence, both objective and subjective, the pain is in fact disabling. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994) (citing *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987)). In this case, the ALJ did not expressly follow this analysis. On remand, the ALJ should expressly follow the *Luna* pain analysis. With respect to the credibility determination and the pain analysis, the ALJ did not apply correct legal standards and substantial evidence does not support her decision. On remand, the ALJ should link his credibility determination with specific evidence of record, analyze Marquez's complaints of disabling pain, and apply the appropriate pain analysis.

## RECOMMENDED DISPOSITION

The ALJ did not apply correct legal standards and his decision is not supported by substantial evidence. Marquez's Motion to Reverse and Remand Administrative Decision, filed March 22, 1999, should be granted. This case should be remanded to the Commissioner for completion of the sequential evaluation process with appropriate consideration accorded to Marquez's severe mental

6

impairment, completion of the PRT form to reflect the evidence of record, discussion in the opinion of the evidence the ALJ considered in reaching the conclusions expressed on the PRT form, reevaluation of her credibility, linkage of the credibility determination with specific evidence of record, analysis of Marquez's complaints of disabling pain under the *Luna* pain analysis, and completion of the sequential evaluation process, including step five, without reliance on the grids.

_____
**JOE H. GALVAN**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE**

Within ten days after a party is served with a copy of these proposed findings and recommended disposition that party may, pursuant to 28 U.S.C. § 636 (b)(1), file written objections to such proposed findings and recommended disposition. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.